UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSVANI R.A.,[1]<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,<br>Respondent. | No. 1:26-cv-06930-TLN-AC<br>A# 213-157-565<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Yosvani R.A.'s Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed a motion to dismiss the petition and record supplements. (ECF Nos. 7, 17–21.) Petitioner filed a reply.[2] (ECF No. 23.) For the reasons set forth below, the Court GRANTS the petition. (ECF No. 1.) Respondent is directed to IMMEDIATELY RELEASE Petitioner.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The Court set a deadline for Petitioner's reply brief of October 6, 2026, however Petitioner's counsel requested an extension of the deadline due to the fact that he anticipated submitting the brief after midnight that day. (ECF Nos. 15, 22.) For good cause shown, the request for extension is GRANTED (ECF No. 22) and the reply brief is deemed timely filed.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on July 14, 2019, and expressed a fear of returning to his native country. (ECF No. 7 at 13–14.) After a positive credible fear determination, U.S. Immigration and Customs Enforcement ("ICE") released Petitioner on parole. (*Id.*) He later adjusted status to that of a lawful permanent resident, with a retroactive effective date of October 2, 2019. (*Id.*)

On October 8, 2023, Petitioner was arrested after his ex-wife alleged he had hit her car with a bat. (*Id.* at 26.) On April 3, 2024, Petitioner pled no contest and was convicted by a Florida state court of aggravated assault with a deadly weapon and criminal mischief, resulting in a sentence of thirty months' probation. (*Id.* at 14, 16–27.) Two years later, on January 20, 2026, ICE arrested Petitioner and served him with a Notice to Appear in immigration court, charging him with having been convicted of a crime of moral turpitude within five years of admission into the United States, for which a sentence of one year or longer may be imposed under 8 U.S.C. § 1227(a)(2)(A)(i). (*Id.* at 29–32.) Petitioner's removal proceedings are ongoing.

Petitioner filed a petition for writ of habeas corpus in the Southern District of Florida on March 24, 2026. (*Id.* at 105–12.) The court dismissed the petition without prejudice on July 7, 2026, due to deficiencies in his application to proceed in forma pauperis; the court did not reach the merits of the petition. (*Id.* at 115–16.)

On May 19, 2026, the Miami Krome Immigration Court granted Petitioner bond in the amount of $2,500, subject to conditions of release.[3] (*Id.* at 34.) The same day, the Department of Homeland Security ("DHS") filed a motion to reconsider that decision contending that the immigration judge relied on an incomplete record. (*Id.* at 38–94.) The next day, the immigration court granted the motion and vacated Petitioner's bond without explanation. (*Id.* at 96.) On May 21, 2026, the immigration judge ("IJ") held another bond hearing that lasted less than a minute, including interpretation. (ECF No. 21.) At the hearing, the IJ stated: "So the Department is

---

[3] The conditions imposed by the immigration judge were as follows: "no arrests; no harmful contact; stay away from ex-spouse; no driving without a valid driver's license; no illegal drugs." (ECF No. 7 at 34.)

against giving you a bond at this time. So I'm just gonna take no action for now. You can always revisit the bond." (*Id.* at 00:34–54.) The IJ then issued a written ruling which stated that the court would take "No action." (ECF No. 7 at 99.) In the five months since, no further bond proceedings in immigration court have taken place. (*See generally* ECF No. 23.)

Petitioner was subsequently transferred to Central Valley Annex Detention Facility, where he remains detained. (ECF No. 1 at 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues that his detention violates the Fifth Amendment Due Process Clause and his bond hearing failed to provide constitutionally sufficient process.[4] (ECF No. 1 at 6–7; ECF No. 23 at 3–8.) Respondent contends that Petitioner's claims are barred by prudential exhaustion and the abuse of the writ doctrine, and that he is lawfully detained pursuant to 8 U.S.C. § 1226(a). (ECF No. 7 at 3–5.)

---

[4] Petitioner also argues that the conditions of his confinement are punitive, his detention has become unconstitutionally prolonged, and that his detention violates the Fourth Amendment and the Immigration and Nationality Act's implementing regulations. (ECF No. 1 at 6–7; ECF No. 23 at 9–11, 14–16.) Finding relief warranted on Petitioner's procedural due process claim, the Court need not address these additional arguments.

A. Abuse of the Writ Doctrine

Respondent argues that Petitioner's claims are barred by his earlier-filed habeas petition in the Southern District of Florida pursuant to the abuse of the writ doctrine. (ECF No. 7 at 5.) The common law "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* The government bears the burden of pleading abuse of the writ and must do so with "clarity and particularity." *Id.*; *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), *superseded by statute on other grounds as stated in Banister v. Davis*, 590 U.S. 504 (2020). "The burden to disprove abuse then becomes petitioner's." *McCleskey*, 499 U.S. at 494.

Respondent does not identify any duplicative claims with clarity and particularity and, thus, fails to meet his burden to show abuse of writ. *McCleskey*, 499 U.S. at 494. Additionally, Petitioner points out that the instant petition raises due process issues surrounding the vacatur of his bond, which occurred after the filing of his first petition and cannot overlap with the prior petition. (ECF No. 23 at 13.) Furthermore, the Southern District of Florida did not rule on the merits of the prior petition, but dismissed it without prejudice for defects in Petitioner's application to proceed in forma pauperis. (ECF No. 7 at 115–16); *see Hill v. State of Alaska*, 297 F.3d 895, 899 (9th Cir. 2002) (declining to consider a habeas petition "second or successive" under 28 U.S.C. § 2244(b) in part because the previous petition had been "dismissed . . . without prejudice on account of [the petitioner's] failures to pay a $5 filing fee and to use a prescribed court form").

The Court therefore rejects Respondent's arguments on the application of the abuse of the writ doctrine and proceeds to address the merits of Petitioner's claims.

///

///

B. Prudential Exhaustion

Respondent argues that Petitioner should be required to exhaust administrative remedies before pursuing habeas relief, and because he has not appealed the bond denial or requested a new bond hearing due to material changed circumstances, he has not done so. (ECF No. 7 at 3–5.) Petitioner argues that exhaustion should not be required because he raises a constitutional claim that the Board of Immigration Appeals ("BIA") cannot adjudicate, the prudential exhaustion factors weigh in favor of waiving the requirement, and requiring exhaustion would cause him irreparable injury. (ECF No. 23 at 11–13.)

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983).

Here, an administrative appellate record is not necessary to reach a proper decision on Petitioner's claim that his detention does not comport with due process, as the Court is in possession of all evidence necessary to resolve this claim, including the extensive record which was before the immigration court. (ECF Nos. 17–20.) Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, there is no reason to delay for the possibility that the BIA may correct any mistakes in the IJ's decision. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.") Additionally, because Petitioner is currently detained by the government, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential

exhaustion in this case.

C. <u>Fifth Amendment Due Process Challenge to Bond Proceedings</u>

Petitioner claims that the bond proceedings before the immigration court violated his right to due process because the IJ vacated Petitioner's bond without a meaningful further hearing. (ECF No. 23 at 3–8.) Respondent makes no specific argument regarding whether the process Petitioner received in immigration court satisfied the demands of the Fifth Amendment, and instead argues generally that the procedures authorized by 8 U.S.C. § 1226(a) ("§ 1226(a)") have been upheld as constitutional. (ECF No. 7 at 5.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As to the first step, the Court finds Petitioner has a clear liberty interest protected by the Fifth Amendment. Petitioner is a lawful permanent resident who has had legal status for over seven years. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*ii. Process Provided*

As to the second step — the process owed to Petitioner — the parties agree that Petitioner is entitled to the procedural safeguards of § 1226(a) and its implementing regulations. (ECF No.

7 at 5; ECF No. 23 at 16.) Section 1226(a) provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Because the parties agree Petitioner is entitled to a bond hearing in accordance with § 1226(a), the Court proceeds to determine whether he received a constitutionally compliant bond hearing.

At a § 1226(a) bond hearing, an IJ must determine whether a noncitizen is a danger to the community or a flight risk. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (setting forth the nine factors for examination). Otherwise, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Clark*, 124 F.4th at 783–84. However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011). Under an abuse of discretion standard, the Court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

Here, the IJ held an initial bond hearing in which he granted bond, then revoked bond the following day and held a new bond hearing. Petitioner challenges the revocation decision and second bond hearing, thus, the Court examines the sufficiency of those procedures.

First, the IJ held a hearing on May 19, 2026, after which he granted Petitioner bond with

conditions. (ECF No. 7 at 34.) The IJ necessarily found that Petitioner was not a danger to the community nor such a risk of flight that it could not be mitigated by bond. *See Hernandez*, 872 F.3d at 982 ("The fact that ICE or an IJ has determined that a non-citizen is eligible for release on bond shows that he is not so great a flight risk as to require detention without bond.") Yet, within twenty-four hours, the IJ granted DHS's motion for reconsideration and revoked Petitioner's bond without explanation. The IJ's order consists, in its entirety, of two sentences: "[Petitioner]'s bond is hereby vacated/set aside. The Court will schedule a new bond hearing." (ECF No. 7 at 96.) That hearing, held on May 20, 2026, lasted approximately one minute (including interpretation) and consisted of the IJ explaining that "the Department is against giving you a bond at this time. So I'm just gonna take no action for now. You can always revisit the bond." (ECF No. 21.)

An IJ abuses their discretion when they fail to explain the reasoning for their findings. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.")) (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ their] reasoning")). Therefore, the IJ abused his discretion when he failed to provide any explanation or reasoning for revoking Petitioner's bond and reversing his prior findings.

Moreover, on the record before this Court, there was no basis to revoke Petitioner's bond as a matter of law. While the government moved for reconsideration by arguing "the record at the hearing before the immigration judge was incomplete" (ECF No. 7 at 38), it did not identify any "errors of fact or law in the immigration judge's prior decision" as required for such a motion. 8 C.F.R. § 1003.23(b)(2) ("A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the immigration judge's prior decision and shall be

supported by pertinent authority. . . ."). Instead, DHS improperly submitted new evidence and arguments. (ECF No. 7 at 42–94.)

This evidence was available to the government well before the first bond hearing, and DHS's failure to raise it at that point does not demonstrate that the IJ erred. If a litigant wishes for a court to consider evidence, it is incumbent on them to submit that evidence in a timely manner and permit the opposing party to challenge it in a full and fair hearing, not ambush them with it after the fact. *Cf. Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (emphasis in original)).

Without any proper basis to reconsider bond and without any explanation of the IJ's reasoning, the IJ's reversal of his findings less than twenty-four hours prior was an abuse of discretion. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.").

The subsequent bond hearing did not cure this violation of Petitioner's due process rights. Petitioner had no opportunity to rebut or respond to the government's assertions in the motion for reconsideration and no opportunity to present evidence, witnesses, or argument. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.'" (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))). Petitioner's acquiescence to the IJ's offer of another bond hearing was not a knowing, intelligent, or voluntary waiver of rights, particularly given that the IJ never set another hearing. *See Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) ("Biwot's statement that he would not appeal can hardly be characterized as considered and intelligent."). Over the last five months since the second bond hearing, the IJ has not revisited bond proceedings for Petitioner. Petitioner has received no further custody hearings, nor has any such hearing been scheduled in the month since this Petition has been pending.

Without any meaningful explanation of the IJ's reasoning for revocation or for

postponement of further proceedings, and without any further findings, factors considered, or evidence weighed, Petitioner has not been provided adequate due process to ensure the deprivation of his liberty is justified. The Court thus finds the risk that Petitioner has been erroneously deprived of his liberty is high. The government has no legitimate interest in depriving Petitioner of this process. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

*iii. Remedy*

Finally, the Court considers the appropriate remedy.

> "Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 [] (1973) (footnote omitted).

*Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1202 (E.D. Cal. 2025). The usual remedy granted along with the writ of habeas corpus is immediate release, but pursuant to its broad discretion in habeas matters, the Court may impose conditions on this release as it sees fit. *See id.* (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); *Zadvydas*, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

The Court finds that the appropriate remedy for the violation of Petitioner's due process rights is to return Petitioner to the status quo ante litem prior to revocation of his bond, and to order his release under the same conditions first imposed by the immigration court. Therefore, Petitioner must be immediately released after posting bond in the amount of $2,500, and he shall be subject to the previously imposed conditions of release. (ECF No. 7 at 34.)

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondent shall serve Petitioner a copy of this Order **within one court day of the date this Order issues**.

2. Respondent shall allow Petitioner to post a $2,500 bond to secure his release from custody. Upon posting bond, Respondent shall IMMEDIATELY RELEASE Petitioner Yosvani R.A. (A# 213-157-565) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of release.**

2. Upon release, Petitioner shall be subject to the conditions imposed by the immigration judge: refrain from possessing or consuming illegal drugs; refrain from driving without a valid driver's license; stay away from his ex-spouse; refrain from harmful contact with any person; and obey all federal and state laws. These conditions are the most restrictive conditions that may be imposed absent a further hearing before an immigration judge as set forth below.

3. Respondent may re-detain Petitioner if Petitioner violates the conditions of his release and Respondent provides Petitioner notice and an opportunity to be heard as to the alleged violations, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondent demonstrates by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Motion for Temporary Restraining Order is DENIED as moot. (ECF No. 2.)

5. The Motion to Dismiss is DENIED. (ECF No. 7.)

6. The Application to Proceed in Forma Pauperis is GRANTED. (ECF No. 12.)

7. The Motion for Extension of Due Date for Petitioner's Reply Brief is GRANTED. (ECF No. 22.)

8. The Clerk of Court shall enter judgment in favor of Petitioner and close this case. However, any further challenges to Petitioner's current custody shall be filed under this same case number (1:26-cv-06930-TLN-AC).

IT IS SO ORDERED.

**DATE: November 9, 2026**

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE